# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**HOLIDAY BUILDERS, INC.,**

        **Plaintiff,**

-vs-                                                                                 Case No. 6:04-cv-1697-Orl-31KRS

**ZAKIYEH CORPORATION,**
**GENERATION BUILDERS, INC. and**
**CLIFFORD J. PEARSON d/b/a Pearson's**
**Design Group,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT AGAINST DEFENDANTS ZAKIYEH CORPORATION AND CLIFFORD J. PEARSON (Doc. No. 21)
>
> **FILED:** February 1, 2005
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I.  PROCEDURAL BACKGROUND.

On November 22, 2004, the plaintiff Holiday Builders, Inc. (Builders) filed a complaint alleging that the defendants Zakiyeh Corporation (Zakiyeh), Generation Builders, Inc. (Generation), and Clifford J. Pearson d/b/a Pearson's Design Group (Pearson) infringed on a

copyright Builders holds with respect to certain architectural plans for a home design. Doc. No. 1. Generation appeared in the case through counsel. It filed an answer in which it asserts, among other things, affirmative defenses that the copyright in the architectural plans is invalid and that the home that allegedly infringed the copyright is not substantially similar to the copyrighted work. Doc. No. 16.

Zakiyeh and Pearson were served with the complaint on November 30 and December 8, 2004, respectively. Doc. Nos. 6, 7. Neither of these defendants answered the complaint nor otherwise appeared in this case. On January 4, 2005, the clerk of court entered defaults against Zakiyeh and Pearson. Doc. Nos. 14, 15.

On February 1, 2005, Builders filed the present motion for a default judgment against Zakiyeh and Pearson. Doc. No. 21. Builders seeks a final default judgment in the amount of $183,900.00, and an injunction prohibiting Zakiyeh and Pearson's infringing activities. *Id.* ¶¶ 4-5. The Honorable Gregory A. Presnell, presiding district judge, referred this motion to me for issuance of a report and recommendation. On March 3, 2005, I entered an order which provided Builders with an opportunity to address, among other things, whether the principle set forth in *Frow v. De La Vega*, 15 Wall. (82 U.S.) 552 (1872), should preclude entry of a default judgment against Zakiyeh and Pearson before the case was resolved as to Generation. Doc. No. 24. Builders filed a memorandum of law in response to my order on March 18, 2005. Doc. No. 25.

**II.    THE *FROW* RULE.**

In *Frow v. De La Vega*, the plaintiff filed a complaint in which he alleged that fourteen defendants conspired to defraud him out of a large tract of land. *Frow*, 82 U.S. at 554. Frow, who was one of the named defendants, did not timely answer the complaint, but the other defendants did appear and answer. *Id.* A final judgment was entered against Frow. *Id.* The other defendants

prevailed on the merits at trial. *Id.* Frow appealed from the entry of final judgment against him. The United States Supreme Court was confronted with the question of whether the court properly entered a final judgment against Frow before the merits of the claims were decided with respect to Frow's alleged co-conspirators. The Court held that it did not, reasoning as follows:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. . . . Such a state of things is unseemly and absurd, as well as unauthorized by law.

*Id.*

*Frow* remains good law. Some courts have concluded, however, that *Frow* is inapplicable in cases in which the defendants would be jointly *and severally* liable, provided that different results as to different defendants would not be logically inconsistent or contradictory. *See, e.g., In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980). In *In re Uranium Antitrust Litigation*, the court determined that it was appropriate to enter a default judgment regarding liability with respect to nine defendants alleged to have participated with other defendants in a price-fixing conspiracy, because liability was joint and several and the court could foresee no danger of inconsistent results on the issue of liability. *Id.* at 1257. However, the court determined that "[t]he possibility of two distinct determinations as to the damages arising out of a single price-fixing claim is, indeed, an inconsistency." *Id.* at 1262. It reasoned as follows: "While the liability of each defendant presents separate and distinct issues entirely independent of each other, there is a single unified damage to the plaintiff." *Id.* at 1263. Therefore, the court held that a default

judgment could be entered as to liability, but the determination of damages must be made after the claims against each defendant had been resolved. *Id.* at 1262.

The United States Court of Appeals for the Eleventh Circuit appears to read *Frow* more broadly. In *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499 (11th Cir. 1984), a dispute arose regarding the enforceability of exclusive distributorship agreements concerning DEMC ceiling fans. While the facts of the case are complicated, in summary Gulf Coast Fans, Inc. ("Gulf Coast"), had agreements with Pax & Company ("Pax") and Midwest Electronics Importers ("Midwest"), pursuant to which Pax was the exclusive exporter of DEMC ceiling fans from Hong Kong to the United States, Midwest was the exclusive importer of the fans into the continental United States, and Gulf States was the exclusive distributor of the fans in the United States.[1] *Id.* at 1501-02. When the business relationships between these companies went awry, Gulf States sued Midwest and Pax for breach of contract, among other things. *Id.*

On the morning of trial, Pax, through its counsel, stated that it would no longer proceed in the case. *Id.* at 1505. A default was entered against Pax and, thereafter, the court entered a default judgment against Pax awarding $525,775.47 plus costs to Gulf Coast for breach of contract. *Id.* at 1506.

Thereafter, the breach of contract claim between Gulf Coast and Midwest was tried to a jury. "[T]he jury found, in essence, that Gulf Coast had a contract with Midwest that encompassed the parties' written agreement, their course of dealings, and their relationships with PAX and

---

[1] It appears that there were two contracts at issue: one between Pax and Gulf States naming Gulf States as the exclusive distributor of the fans in the United States; and, a second agreement between Gulf States and Midwest naming Midwest as Gulf States' exclusive importer of the fans. *Gulf Coast Fans*, 740 F.2d at 1501-02.

DEMC, and that Gulf Coast breached the agreement first, thereby justifying Midwest's later act of refusing to import DEMC fans exclusively for Gulf Coast." *Id.* at 1509. Therefore, judgment was rendered in favor of Midwest and against Gulf Coast on the breach of contract claim.

Pax moved to set aside the default judgment, arguing, among other things, that the jury verdict in the Midwest trial finding that Gulf Coast was the first party to breach the distributorship contracts exonerated Pax from liability. *Id.* at 1510. The court considered the applicability of *Frow* in these circumstances. It approved a reading of *Frow* that would apply "when defendants are similarly situated, but not jointly liable," noting that it would be "incongruous and unfair to allow Gulf Coast to collect half a million dollars from PAX on a contract that the jury found was breached by Gulf Coast." *Id.* at 1512. It remanded the case with directions to vacate the default and to consider various legal questions, including whether Pax was entitled to introduce evidence as to damages. *Id.*

### III.   ANALYSIS.

In the present case, liability of the three defendants is joint and several, but their positions are similarly situated in that each of them is alleged to have infringed the same copyright. Generation has alleged in its answer, among other things, that the copyright at issue is invalid. Thus, a possibility of inconsistent verdicts exists if the Court enters a default judgment against Zakiyeh and Pearson, finding that they infringed the copyright, and later concludes in the ongoing litigation between Holiday Builders and Generation that the copyright was invalid.

Generation also alleges that the allegedly infringing work is not substantially similar to the copyrighted work. While it is not entirely clear from the complaint, it appears from the motion for default judgment that each of the defendants allegedly infringed the copyright by building and

selling a single home.  If that is so, and the Court finds that the home does not infringe the copyright, a default judgment against Zakiyeh and Pearson finding infringement would be inconsistent with the finding that the allegedly infringing work was not substantially similar to the copyrighted work.  *Cf. Hudson v. Universal Pictures Corp.*, No. 03-CV-1008(FB)(LB), 2004 WL 1205762, at *4-5 (E.D. N.Y. Apr. 29, 2004) (After a court found that there was no substantial similarity between featured film and copyrighted script, it entered summary judgment in favor of defendants who appeared before the court and denied default judgment against defaulting defendant, stating that nothing in the complaint suggested that the defaulting defendant's liability would "hinge on some fact" not applicable to the other defendants.).

For these reasons, I respectfully recommend that the Court deny the Motion for Entry of Default Final Judgment Against Defendants Zakiyeh Corporation and Clifford J. Pearson (Doc. No. 21) without prejudice to refiling it after the case has been resolved with respect to Generation.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 19, 2005.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy